ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
PATRICK R. FITZGERALD (Cal. Bar No. 135512)
Assistant United States Attorney
Chief, National Security Section
MELISSA MILLS (Cal. Bar No. 248529)
Assistant United States Attorney
National Security Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-4591/0627
    Facsimile:  (213) 894-6436
    E-mail:    Patrick.Fitzgerald@usdoj.gov
               Melissa.Mills@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT

NOV - 4 2013

CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR **To Be Determined** |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO REQUEST BY FEDERAL PUBLIC DEFENDER FOR PROVISIONAL APPOINTMENT TO REPRESENT PAUL ANTHONY CIANCIA; MEMORANDUM OF POINTS AND AUTHORITIES |
| v. | |
| PAUL ANTHONY CIANCIA, | |
| Defendant. | |

1       Plaintiff, United States of America, by and through its counsel

2   of record, hereby opposes the November 3, 2013 request by the

3   Federal Public Defender for an order appointing that agency to

4   provisionally represent Paul Anthony Ciancia in this matter.

5       The government's position is based upon the attached memorandum

6   of points and authorities, the files and records in this case, and

7   any other evidence or argument that the Court may consider.

8   Dated: November 4, 2013        Respectfully submitted,

9                                 ANDRÉ BIROTTE JR.
                              United States Attorney

10

11                                ROBERT E. DUGDALE
                              Assistant United States Attorney
                              Chief, Criminal Division

12

13                                  /s/
                              PATRICK FITZGERALD

14                                MELISSA MILLS
                              Assistant United States Attorneys

15

16                                Attorneys for Plaintiff
                              UNITED STATES OF AMERICA

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

On November 2, 2013, the government filed a federal complaint against Paul Anthony Ciancia ("Ciancia").  The complaint alleges that Ciancia entered Los Angeles International Airport on November 1, 2013; approached a Transportation Security Administration ("TSA") security checkpoint; pulled an assault rifle out of his bag and fired multiple rounds at a TSA officer at point-blank range, killing the officer; and then shot multiple other TSA officers and at least one passenger.  The complaint charges Ciancia with violating 18 U.S.C. § 1114 (murder of a federal officer) and 18 U.S.C. § 37 (violence at international airports).  Ciancia is hospitalized and under heavy sedation due to gunshot wounds sustained at the scene.

On November 3, 2013, the Federal Public Defender ("FPD") filed an application for provisional appointment to represent Ciancia. The application contained no statutory or case citations or other authority in support of the request.  It only cites only to a belief that Ciancia "could benefit greatly from the appointment of counsel at this time," and, based on the charges themselves and news reports regarding his employment history, "it appears likely that he will qualify for the services of the FPDO."  (FPD application, ¶ 4.)  At this time, the government opposes the FPD application, as the requested appointment would be premature and has no constitutional or statutory basis.

Ciancia has no Sixth Amendment right to counsel at this stage of the proceedings.  Massiah v. United States, 377 U.S. 201, 205

(1964) (defendants are entitled to counsel "from the time of their arraignment"); United States v. Gouveia, 467 U.S. 180, 192 (1984) (defendants were not constitutionally entitled to appointment of counsel prior to arraignment, "before any adversary judicial proceedings had been initiated against them"); United States v. Pace, 833 F.2d 1307, 1312 (9th Cir. 1987) (Sixth Amendment right to counsel "did not attach upon the filing of the complaint by the FBI, the issuance of the warrant of arrest, or [defendant's] arrest"). The Sixth Amendment expressly applies to "criminal prosecutions," rather than to criminal investigations, and the filing of a federal criminal complaint does not commence a formal prosecution triggering the Sixth Amendment right to counsel.  Id.; see also United States v. Alvarado, 440 F.3d 191, 200 (4th Cir. 2006) (at the filing of a complaint, "[t]he criminal process is still in the investigative stage, and the 'adverse positions of government and defendant' have yet to solidify") (quoting Gouveia, 467 U.S. at 189).

The Criminal Justice Act, 18 U.S.C. § 3006A ("CJA" or "the Act") governs appointment of counsel to represent indigent defendants in federal court.  The CJA suggests that the right to representation pursuant to the Act begins at the initial appearance. 18 U.S.C. § 3006A(c) ("[a] person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance before the United States magistrate judge or the court . . . .") (emphasis added).  On that rationale, federal district court judges in the Southern District of New York have

recently denied three separate requests for appointment of FPD and
CJA counsel prior to initial appearance, holding that appointment of
counsel is appropriate only after the defendant has appeared before
a magistrate judge and submitted a sufficient financial affidavit or
other satisfactory proof of indigency.  United States v. Al Liby, CR
98-1023-LAK, CR 1356, (SDNY, filed October 11, 2013); United States
v. Mustafa, CR 04-356-KBF, CR 129 (SDNY, filed September 13, 2012);
United States v. Fawwaz, CR 98-1023-LAK, CR 1102 (SDNY, filed May 6,
2011).[1]  Indeed, in Fawwaz, the Court denied the request even though
the defendant himself joined in the request for counsel.

No legal basis for appointment of counsel at this stage is
apparent in this case, and none has been offered.  Ciancia's
entitlement to a government-funded lawyer pursuant to the CJA has
not been established and should not be presumed.  Moreover, when and
if Ciancia recovers sufficiently to make an initial appearance, he
alone will be best positioned to determine whether appointment of
counsel is in his best interest, and if so, which counsel.  In the
meantime, there is no ground for the FPD – or any other
disinterested party unknown to Ciancia - to claim dominion over his
fundamental legal decisions.  Furthermore, the FPD does not purport
to have made any effort to consult with Ciancia's family, who are
the persons who have legal authority to act on Ciancia's behalf
during his incapacitation.

---

[1] Copies of these rulings are attached hereto for the
convenience of the Court.

1   The practical effect of appointing counsel at this time - other

2   than prematurely selecting the FPD as Ciancia's legal counsel

3   without input from Ciancia - would be to prevent the government from

4   questioning Ciancia, as he would then be a represented party.

5   
6   Significantly, this would also preclude the government from

7   questioning Ciancia, pursuant to the recognized public-safety

8   exception to the Miranda rule, on the possible existence of co-

9   conspirators, organizational support for his actions, and other

10  violent plots about which Ciancia could have knowledge.  See New

11  York v. Quarles, 467 U.S. 649 (1984).[2]  Moreover, the United States

12  Supreme Court has created an investigative framework, notably in

13  
14  Massiah and Miranda, in which the government may question a

15  defendant without counsel after an arrest and prior to arraignment

16  in order to obtain information important to the investigation and to

17  public safety.  The unilateral action by the Court now urged by the

18  FPD would foreclose the opportunity - should Ciancia so choose - to

19  waive his constitutional rights and speak to the government about

20  the offense prior to arraignment.  In most other cases, that brief

21  window between arrest and arraignment would have already closed by

22  the time of the FPD request.  Ciancia's injuries, which have

23  
24  prevented him from speaking with anyone and thus have enlarged that

25  window, should not alter the investigative framework constructed by

26  
27  ---

28  [2] It has been reported that police officers at the scene of the shooting very briefly questioned defendant about the existence of additional shooters, but the FBI feels that additional topics need to be addressed with defendant if he is willing to talk.

1   the Supreme Court.

2       For these reasons, the government respectfully opposes the

3   application by the FPD for provisional representation at this time.

4

5   Dated: November 4, 2013          Respectfully submitted,

6                                    ANDRÉ BIROTTE JR.
                                     United States Attorney

7
                                     ROBERT E. DUGDALE
8                                    Assistant United States Attorney
                                     Chief, Criminal Division

9

10                                   _____
                                     PATRICK R. FITZGERALD
11                                   MELISSA MILLS
                                     Assistant United States Attorneys

12
                                     Attorneys for Plaintiff
13                                   UNITED STATES OF AMERICA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

        -against-

ANAS AL LIBY, a/k/a Nasih al Raghie, a/k/a Anas al Sebai,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Application of

DAVID E. PATTON, Executive Director, Attorney-in-
Chief, Federal Defenders of New York
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

S10 98 Crim. 1023 (LAK)

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/11/13

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

      This matter is before the Court on an application by David E. Patton[1] to appoint an attorney for the defendant.

I

      The defendant is charged in the superseding indictment with, among other offenses, conspiracy to kill United States nationals and conspiracy to kill officers and employees of the United States at the U.S. embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania, which were bombed in 1998 with great loss of life and other casualties. He long was a fugitive.

---

[1]    Mr. Patton is Executive Director and Attorney-in-Chief of Federal Defenders of New York, which provides legal representation in the federal courts in New York City to some indigent defendants.

2

According to press reports and a statement issued by the Secretary of Defense, the defendant was apprehended last weekend in Libya in operations by U.S. military personnel. At least one press source has reported that the defendant is being held on a naval vessel in the Mediterranean.

Mr. Patton relies on Fed. R. Crim. P. 5(a)(1)(B), which provides that:

> "A person making an arrest outside the United States must take the defendant without unnecessary delay before a magistrate judge, unless a statute provides otherwise."

The United States Attorney's office opposes the application. It contends that the motion is premature because the Criminal Justice Act,[2] which governs the appointment of counsel for indigent defendants in federal courts, "does not countenance appointment of counsel prior to a defendant's appearance in a United States federal court."[3] Counsel should not be appointed, it argues, unless and until the defendant appears in federal court and supplies appropriate proof of indigency, which usually is done by financial affidavit. The government further argues that, contrary to Mr. Patton's position, the defendant "has not been criminally arrested. Rather, he has been detained by the United States Armed Forces, acting under their own legal authorities" which does not, in the government's submission, "trigger Rule 5."[4]

---

[2]       18 U.S.C. § 3006A.

[3]       DI 1348.

It contends also that this Court's Revised Plan for Furnishing Representation Pursuant to the CJA is to similar effect.

[4]       DI 1350.

3

II

Mr. Patton and the government have raised or alluded to, explicitly or otherwise, a number of issues, both factual and legal, including among others whether Mr. Patton has standing to make the present application,[5] whether the defendant has been arrested within the meaning of Rule 5, whether the delay in bringing him before the Court has been or may become "unnecessary," and the remedy for any such unnecessary delay. But it is unnecessary for present purposes to decide whether Mr. Patton has standing, and the other questions are premature.

As the government argues, Rule 5 is "triggered only by federal criminal arrest."[6] The government denies that any federal criminal arrest has taken place, and there is no evidence to the contrary. Thus, there is no proper basis on which the Court could conclude that the obligation to produce the defendant before it in this criminal case has come into existence. The decision whether to proceed with a criminal prosecution of this indictment in the first instance, at least, is an Executive Branch function. It remains to be seen whether such a prosecution will go forward.

Even if it were clear that a federal criminal arrest has occurred, two judges of this Court previously have held that the appropriate time for the appointment of counsel is upon the arrival of the defendant in this district and the submission of a sufficient financial affidavit or other satisfactory proof of indigency.[7] I see no reason to depart from that view. Moreover, once the

---

[5]      *See Padilla v. Rumsfeld*, 352 F.3d 695, 702-04 (2d Cir. 2003), *rev'd on jurisdictional grounds*, 542 U.S. 426 (2004).

[6]      *United States v. Ghailani*, 751 F. Supp.2d 515, 526 n.66 (S.D.N.Y. 2010).

[7]      *United States v. al Fawwaz*, No. S9 98 Crim. 1023 (LAK), DI 1102 (S.D.N.Y. filed May 6, 2011); *United States v. Mustafa*, No. 04 Crim. 356 (KBF), DI 129 (S.D.N.Y. filed Sept. 13, 2013).

4

defendant is presented, he is free to seek any appropriate remedy for any alleged violation of Rule 5.

Finally, the Court is mindful of the fact that Mr. Patton's concerns may include the legality of the defendant's current detention, assuming that he is not detained pursuant to an arrest on this indictment. But such questions are not properly cognizable under Fed. R. Crim. P. 5. The Court therefore expresses no view with respect to the existence or nature of other means of raising such concerns.

III

Mr. Patton's application is denied without prejudice to renewal upon the presentation of the defendant before this Court and his furnishing of appropriate proof of indigency.

SO ORDERED.

Dated:         October 11, 2013

Lewis A. Kaplan
United States District Judge

MEMO ENDORSED

**O'Connor and Kirby, P.C.**
**Attorneys at Law**
174 Battery St., 3d floor
Burlington, VT 05401

DAVID V. KIRBY
Admitted in NY, VT and IL

BARBARA E. O'CONNOR
Admitted in NY, VT, CT and CA

(802) 863-0112
(802) 865-5960 (facsimile)

April 30, 2011

Hon. Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

5/6/11

Re: *United States v. Khalid Al Fawwaz* Docket No. S(9) 98-Cr-1023-15

Dear Judge Kaplan,

I write on behalf of Khalid Al Fawwaz to request that you appoint the undersigned pursuant to the Criminal Justice Act to represent Mr. Al Fawwaz. As Your Honor is fully aware, Mr. Al Fawwaz is charged in the above-noted indictment in the Embassy Bombings Case. He anticipates extradition from the United Kingdom to the United States within the next few months to face these charges. Prompt appointment of counsel in this case will help him prepare for trial on these charges in the most expeditious manner, address pre-trial issues efficiently, and will allow him to prepare a more thoughtful defense.[1] He asks that this Court appoint the undersigned for the reasons discussed in this letter.

---

[1] I have been advised by Mr. Al Fawwaz's European counsel that Mr. Al Fawwaz is indigent. A financial affidavit supporting this request will be filed immediately upon Mr. Al Fawwaz's extradition. Should the Court wish the affidavit to be filed sooner, I will arrange for the filing.

1

# Background

On December 20, 2000, a superseding indictment S(9) was filed against numerous individuals, including Khaled Al Fawwaz. Mr. Al Fawwaz had already been charged in the case in prior indictments. He is charged in four counts in S(9): Counts 1,3, 5 and 6 of the indictment. The case involves numerous offenses arising out of alleged participation in a terrorist organization led by defendant Usama Bin Laden and the bombings of United States Embassies in Nairobi, Kenya and Dar es Salaam, Tanzania in August of 1998. We understand that S(9) is the indictment on which Mr. Al Fawwaz is being extradited from the United Kingdom.

Prior to this indictment, the Court had directed counsel for those defendants before it to confer regarding protective orders and the confidential nature of counsels' clearance applications and investigation prior to the release or review of certain documents in the possession of the United States. A protective order had been filed on July 29, 1999 regarding the unauthorized disclosure of national security information and documents.

Over the course of the past 12 years, Mr. Al Fawwaz has been engaged in a request for political asylum in the United Kingdom, based upon his fear of persecution in his native country of Saudi Arabia as a result of his high profile opposition to the Saudi government. Until his arrest, Mr. Al Fawwaz was the head in London of the "Advice and Reform Committee," an organization calling for non-violent opposition to the Saudi government. In light of the current events in that area of the world, we can surmise his views were and are shared by many, but, nonetheless, unpopular with the Saudi government.

Mr. Al Fawwaz is represented by counsel in his immigration case in the United Kingdom with respect to issues arising under the United Nations Convention on Refugees and the European Convention on Human Rights. The governments of both the United Kingdom and the United States have agreed that, should Mr. Al Fawwaz be acquitted and released in the United States on this case, he will be returned to the United Kingdom rather than to Saudi Arabia. He has also had counsel challenging his extradition to the United States. The extradition proceedings in the United Kingdom have come to an end, and Mr. Al Fawwaz has exhausted his rights of appeal in that venue. However, his attorneys continue to challenge his extradition before the European Court of Human Rights on issues relating to the possible conditions of confinement Mr. Al Fawwaz could face in the United States, and whether those conditions would be in compliance with the

2

standards required under Article 3 of the European Convention on Human Rights. It is likely those proceedings will be completed with the next months and that Mr. Al Fawwaz will be extradited to the United States to face his charges before this Court at that time.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
## LOCAL RULES REGARDING APPOINTMENT OF COUNSEL

Section VII.D. of the Revised Plan for Furnishing Representation Pursuant to the Criminal Justice Act (18 U.S.C. § 3006A) allows appointments of attorneys who are not presently on the Southern District CJA panel for indigent defendants. That section provides:

### D. APPOINTMENTS IN SPECIAL CIRCUMSTANCES

Whenever a judge makes a written finding, in a proceeding in which counsel must be assigned pursuant to this Plan, that there is good cause shown which renders it in the interests of justice that counsel who is not employed by the FDNY or a member of the CJA Panel be assigned, the district judge or magistrate judge may appoint that counsel with the consent of the person to be so represented and the approval of the Chief Judge of the District. Such appointment shall constitute a temporary appointment to the CJA Panel for the purpose of that proceeding only. If the magistrate judge makes such an appointment and the case is transferred to a district judge, the district judge will review the matter and either confirm the appointment or assign a new attorney from the CJA Panel.

David Kirby is on the CJA Panel in the District of Vermont, but not currently a member of the Southern District Panel.

### COUNSEL'S QUALIFICATIONS[2]

---

[2] If the Court seeks references, I suggest it contact Judge William K. Sessions, III of the District of Vermont, Judge John Gleeson, EDNY, Chief Judge Carol Amon, EDNY, Judge J. Garvin Murtha, Vermont and/or Judge Peter Hall of the Second Circuit. Each of these Judges know me both personally and professionally and could provide the Court with insight into my qualifications.

3

Beyond being a member of the State Bars of New York, Vermont and Illinois, I am a member of the Vermont CJA Panel, and an experienced federal practitioner. I have been an Assistant United States Attorney for about 30 years; 10 years in the Eastern District of New York, serving at times as Chief of General Crimes and Chief of Appeals and about 20 years in the District of Vermont, serving either as Chief of the Criminal Division, the United States Attorney or the First Assistant. In both of those offices, I tried numerous federal jury trials (certainly more than 20 jury trials to verdict) and have handled too many federal appeals to count, either directly or through my supervisory role as the Chief of Appeals (EDNY) or as the de-facto appeals chief (VT). As my resume (attached) discloses, I attended Northwestern University School of Law, where I was Editor-in-Chief of the Northwestern University Law Review. I then clerked for two federal judges, Judge Robert Sprecher, United States Court of Appeals for the Seventh Circuit and Justice John Paul Stevens, United States Supreme Court. I am admitted in New York State and the United States District Courts for the Southern and Eastern Districts of New York.

While serving as an AUSA in both the EDNY and Vermont, I have had a substantial amount of experience with national security matters (including FISA wiretaps). I was the National Security Coordinator in the U.S. Attorney's Office in Vermont and also handled (or coordinated) all the extradition matters for that office. I carried a Top Secret clearance which I presume could be reinstated without too substantial an investigation. Thus, I have experience with various issues concerning prosecution of crimes abroad, and the issues of national security which arise.

At present, I practice in Vermont with my own firm, O'Connor & Kirby, P.C. and in New York as of counsel to Krantz & Berman, LLP, and represent both individuals and corporations in both venues. If appointed to represent Mr. Al Fawwaz, I would utilize the offices at Krantz & Berman, 747 Third Avenue, New York, NY as my primary workspace, and would anticipate spending the majority of my time in New York.

### COUNSEL'S RELATIONSHIP WITH THE DEFENDANT

I have been in contact with Mr. Al Fawwaz's attorneys for more than eight months and have developed a substantial rapport with them. The initial contact came about through Mr. Al Fawwaz's attorney in the United Kingdom, Wesley

4

Gryk, who is representing Mr. Al Fawwaz with regard to immigration matters. Mr. Gryk, about a year ago, began looking for an attorney in the United States to represent Mr. Al Fawwaz. As can be seen from the letter he has written to the Court in support of this application (attached), Mr. Gryk is an attorney trained in the United States now practicing in the UK. He reached out to friends of his in the United States, including an attorney in the United State's Attorney's Office in Boston, James Farmer. Mr. Farmer, a colleague I have known for many years from our mutual supervisory responsibilities in United State's Attorney's offices, recommended that Mr. Gryk contact me.

From our initial contact, Mr. Gryk made it clear that Mr. Al Fawwaz sought true legal representation to meet these charges, not an attorney who would sensationalize the case or seek publicity for any cause. This is an individual facing possible imprisonment for life who is anxious to receive thoughtful, careful legal representation, analysis of the issues and solid advice.

While I have not had access to the discovery in the matter, I have studied and learned a great deal about the case, and about the proceedings and co-defendant cases, including Ahmed Khalfan Ghailani's trial and sentencing. I agree with Mr. Gryk's assessment that it will mean a substantial amount to someone in Mr. Al Fawwaz's situation to have counsel who is already familiar with the case, and with whom he is comfortable. He is facing the possibility of living the rest of his life in prison. He has fought extradition because the consequences of appearing in the United States are so extreme. While I am confident that Mr. Al Fawwaz would receive effective representation from any SDNY Panel member (a number of whom I have known), I do believe that he would be better served by starting with counsel that he trusts, who has substantial international criminal law experience, who has held high security clearances in the past, and whose interest in the case is strictly based on concern for Mr. Al Fawwaz.

5

## CONCLUSION

Both Mr. Al Fawwaz's interests in competent and zealous representation, and the interests of the Court in efficient and effective representation argue for appointment of counsel who has an established relationship with Mr. Al Fawwaz, who is already familiar with the case and Mr. Fawwaz's circumstances to date, who would likely face little investigation regarding security clearance, who has substantial experience with international federal criminal law issues and who is qualified to serve.

Sincerely,

David V. Kirby, Esq.
O'Connor & Kirby, P.C.
David@Kirbyoconnor.com

*Denied without prejudice to renewal upon the defendant's arrival in this district and submission of a sufficient financial affidavit.*

**SO ORDERED**

LEWIS A. KAPL...

6



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 12, 2012

**By Electronic Mail**

The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:
> DATE FILED: SEP 1 3 2012

Re:     United States v. Mustafa Kamel Mustafa and Haroon Aswat
        04 Cr. 356 (KBF)

Dear Judge Forrest:

        The Government writes respectfully in response to the letter of Priya Chaudhry, Esq., dated August 30, 2012, in which she requests to be appointed as counsel to Haroon Aswat – a defendant in the above-captioned Indictment – pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A ("CJA" or "Act"). Aswat, who was arrested in the United Kingdom in 2005, is presently incarcerated there, and a request for his extradition to the United States remains pending. This Court should deny Ms. Chaudhry's application as premature, as Judge Lewis A. Kaplan denied in *United States v. Khalid Al Fawwaz*, 98 Cr. 1023 (LAK), when an attorney made a similar application with respect to another defendant whose extradition from the United Kingdom is pending. A copy of Judge Kaplan's memorandum endorsement denying that application is attached to this letter as Exhibit A.

        At this time, the Government opposes Ms. Chaudhry's application to be appointed as CJA counsel on procedural grounds, primarily because it is premature. Initially, the Government disagrees with Ms. Chaudhry's assertion that the Act, at Section 3006A(a)(1)(A), authorizes her appointment at this stage because Aswat already has been indicted. *See* Letter of Priya Chaudhry to The Honorable Katherine B. Forrest, Aug. 30, 2012, at 2. Section 3006A(a)(1) merely sets forth the categories of financially-eligible individuals who are entitled to a CJA appointment; that section does not, however, provide for when that appointment may take place.

        Rather, the Act contemplates that a CJA appointment not occur before a defendant appears in a United States federal court. First, Section 3006A(b) provides that the CJA appointment should be made by the judge when a person entitled to representation "appears without counsel" and the judge advises that individual that he or she "has the right to be

Hon. Katherine B. Forrest
September 12, 2012
Page 2

represented by counsel and that counsel will be appointed to represent him if [the defendant] is
financially unable to obtain counsel."[1] The Act thus plainly contemplates the defendant's
appearance before a United States District Judge or Magistrate Judge before a CJA appointment
can occur.

Section 3006A(c) also makes clear that a CJA appointment commences upon a
defendant's initial appearance. That section of the Act provides that a CJA representation shall
cover "every stage of the proceedings from [the defendant's] *initial appearance* before the
United States magistrate judge or the court through appeal, including ancillary matters
appropriate to the proceedings." 18 U.S.C. § 3006A(c) (emphasis added); *cf. Doherty* v. *United
States*, 404 U.S. 28, 33 (1971) (noting that the CJA provides for representation "from
arraignment").

Consistent with Section 3006A(c) of the CJA, this Court's local plan governing CJA
appointments provides for the appointment to occur at a defendant's appearance before the
presiding District Judge or Magistrate Judge. *See* United States District Court, Southern District
of New York, Revised Plan for Furnishing Representation Pursuant to the CJA ("CJA Plan"),
Section VII(B) (requiring the presiding magistrate judge or district judge to appoint counsel
"[u]pon the appearance" of the defendant"); *but see id.* Section VII(A) (providing that counsel
should be provided pursuant to the CJA Plan "as soon as feasible after [eligible defendants] are
taken into custody, when they appear before a committing magistrate judge or district judge,
when they are formally charged, or when they otherwise become entitled to counsel under the
Criminal Justice Act, whichever occurs earliest").

Moreover, commencing representation under the CJA upon initial appearance makes
good sense. The expenditure of CJA money for the representation of a defendant who has not
yet been extradited to the United States, and whose presence in this Court is thus not assured, is
premature. Indeed, in the case of Aswat's pending extradition, there is ongoing litigation before
the European Court of Human Rights concerning competency issues, and we cannot predict with
any certainty when a decision will be rendered.

We also note that, in the ordinary course, the CJA Plan implicitly does not allow an
attorney to select his or her client. The CJA Plan explicitly does not countenance a CJA
appointment of a particular attorney selected by a defendant. *See, e.g.*, Section VII(C)(2) ("No
person shall have the right to select the counsel appointed to provide representation pursuant to
this Plan."). Logically, an attorney also should not be able to select his or her client of choice.

---

[1] While the Government anticipates that Aswat will be eligible for CJA funding, we also note
that the Act requires that the presiding District Judge or Magistrate Judge make an "appropriate
inquiry that the person is financially unable to obtain counsel," 18 U.S.C. § 3006A(b), which has
not occurred in this case.

Hon. Katherine B. Forrest
September 12, 2012
Page 3

Lastly, Judge Kaplan has denied a similar application for a pre-extradition CJA
appointment, which was made under indistinguishable circumstances. On April 30, 2011, an
attorney sought CJA appointment by Judge Kaplan to represent Khalid Al Fawwaz ("Fawwaz"),
who is charged in *United States* v. *Khalid Al Fawwaz*, 98 Cr. 1023 (LAK), in many counts for
his alleged role in the bombings of the United States Embassies in Kenya and Tanzania in
August 1998. Fawwaz, like Aswat, has been arrested in the United Kingdom, where he remains
incarcerated, and his extradition to the United States also is pending before the European Court
of Human Rights. In seeking appointment prior to Fawwaz's extradition, the attorney contended
that "[p]rompt appointment of counsel in this case will help [Fawwaz] prepare for trial on these
charges in the most expeditious manner, address pre-trial issues efficiently, and will allow him to
prepare a more thorough defense." Exhibit A at 1. On May 5, 2011, Judge Kaplan denied that
application "without prejudice to renewal upon the defendant's arrival in this district and
submission of a sufficient financial affidavit." *Id.* at 6.

Accordingly, the Government opposes Ms. Chaudhry's application for appointment to
represent Aswat under the Criminal Justice Act prior to his appearance in this District.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____/s/_____

John P. Cronan / Edward Y. Kim
Assistant United States Attorneys
(212) 637-2779 / 2401

cc:    Priya Chaudhry, Esq.

Enclosure

Ordered

Application to appoint
CJA counsel at this time
denied. Defendant shall have
an appropriate opportunity at the his
time of arrival in this district and
submission of sufficient financial affidavit

K. B. Forrest
USDJ

9/13/12

Case 2:13-mi-02894-DUTY Document 9 Filed 11/04/13 Page 21 of 26 Page ID #:73
Case 1:04-cr-00356-KBF Document 120 Filed 09/13/12 Page 4 of 9
Case 1:98-cr-01023-LAK Document 1102 Filed 05/06/11 Page 1 of 6

MEMO ENDORSED

### O'Connor and Kirby, P.C.
### Attorneys at Law
174 Battery St., 3d floor
Burlington, VT 05401

DAVID V. KIRBY
Admitted in NY, VT and IL

BARBARA E. O'CONNOR
Admitted in NY, VT, CT and CA

(802) 863-0112
(802) 865-5980 (facsimile)

April 30, 2011

Hon. Lewis A. Kaplan
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

5/6/11

Re: _United States v. Khalid Al Fawwaz_ Docket No. S(9) 98-Cr-1023-15

Dear Judge Kaplan,

I write on behalf of Khalid Al Fawwaz to request that you appoint the undersigned pursuant to the Criminal Justice Act to represent Mr. Al Fawwaz. As Your Honor is fully aware, Mr. Al Fawwaz is charged in the above-noted indictment in the Embassy Bombings Case. He anticipates extradition from the United Kingdom to the United States within the next few months to face these charges. Prompt appointment of counsel in this case will help him prepare for trial on these charges in the most expeditious manner, address pre-trial issues efficiently, and will allow him to prepare a more thoughtful defense.[1] He asks that this Court appoint the undersigned for the reasons discussed in this letter.

_____

[1] I have been advised by Mr. Al Fawwaz's European counsel that Mr. Al Fawwaz is indigent. A financial affidavit supporting this request will be filed immediately upon Mr. Al Fawwaz's extradition. Should the Court wish the affidavit to be filed sooner, I will arrange for the filing.

1

## Background

On December 20, 2000, a superseding indictment S(9) was filed against numerous individuals, including Khaled Al Fawwaz. Mr. Al Fawwaz had already been charged in the case in prior indictments. He is charged in four counts in S(9): Counts 1,3, 5 and 6 of the indictment. The case involves numerous offenses arising out of alleged participation in a terrorist organization led by defendant Usama Bin Laden and the bombings of United States Embassies in Nairobi, Kenya and Dar es Salaam, Tanzania in August of 1998. We understand that S(9) is the indictment on which Mr. Al Fawwaz is being extradited from the United Kingdom.

Prior to this indictment, the Court had directed counsel for those defendants before it to confer regarding protective orders and the confidential nature of counsels' clearance applications and investigation prior to the release or review of certain documents in the possession of the United States. A protective order had been filed on July 29, 1999 regarding the unauthorized disclosure of national security information and documents.

Over the course of the past 12 years, Mr. Al Fawwaz has been engaged in a request for political asylum in the United Kingdom, based upon his fear of persecution in his native country of Saudi Arabia as a result of his high profile opposition to the Saudi government. Until his arrest, Mr. Al Fawwaz was the head in London of the "Advice and Reform Committee," an organization calling for non-violent opposition to the Saudi government. In light of the current events in that area of the world, we can surmise his views were and are shared by many, but, nonetheless, unpopular with the Saudi government.

Mr. Al Fawwaz is represented by counsel in his immigration case in the United Kingdom with respect to issues arising under the United Nations Convention on Refugees and the European Convention on Human Rights. The governments of both the United Kingdom and the United States have agreed that, should Mr. Al Fawwaz be acquitted and released in the United States on this case, he will be returned to the United Kingdom rather than to Saudi Arabia. He has also had counsel challenging his extradition to the United States. The extradition proceedings in the United Kingdom have come to an end, and Mr. Al Fawwaz has exhausted his rights of appeal in that venue. However, his attorneys continue to challenge his extradition before the European Court of Human Rights on issues relating to the possible conditions of confinement Mr. Al Fawwaz could face in the United States, and whether those conditions would be in compliance with the

2

standards required under Article 3 of the European Convention on Human Rights. It is likely those proceedings will be completed with the next months and that Mr. Al Fawwaz will be extradited to the United States to face his charges before this Court at that time.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
## LOCAL RULES REGARDING APPOINTMENT OF COUNSEL

Section VII.D. of the Revised Plan for Furnishing Representation Pursuant to the Criminal Justice Act (18 U.S.C. § 3006A) allows appointments of attorneys who are not presently on the Southern District CJA panel for indigent defendants. That section provides:

### D. APPOINTMENTS IN SPECIAL CIRCUMSTANCES

Whenever a judge makes a written finding, in a proceeding in which counsel must be assigned pursuant to this Plan, that there is good cause shown which renders it in the interests of justice that counsel who is not employed by the FDNY or a member of the CJA Panel be assigned, the district judge or magistrate judge may appoint that counsel with the consent of the person to be so represented and the approval of the Chief Judge of the District. Such appointment shall constitute a temporary appointment to the CJA Panel for the purpose of that proceeding only. If the magistrate judge makes such an appointment and the case is transferred to a district judge, the district judge will review the matter and either confirm the appointment or assign a new attorney from the CJA Panel.

David Kirby is on the CJA Panel in the District of Vermont, but not currently a member of the Southern District Panel.

### COUNSEL'S QUALIFICATIONS[2]

---

[2] If the Court seeks references, I suggest it contact Judge William K. Sessions, III of the District of Vermont, Judge John Gleeson, EDNY, Chief Judge Carol Amon, EDNY, Judge J. Garvin Murtha, Vermont and/or Judge Peter Hall of the Second Circuit. Each of these Judges know me both personally and professionally and could provide the Court with insight into my qualifications.

Beyond being a member of the State Bars of New York, Vermont and Illinois, I am a member of the Vermont CJA Panel, and an experienced federal practitioner. I have been an Assistant United States Attorney for about 30 years; 10 years in the Eastern District of New York, serving at times as Chief of General Crimes and Chief of Appeals and about 20 years in the District of Vermont, serving either as Chief of the Criminal Division, the United States Attorney or the First Assistant. In both of those offices, I tried numerous federal jury trials (certainly more than 20 jury trials to verdict) and have handled too many federal appeals to count, either directly or through my supervisory role as the Chief of Appeals (EDNY) or as the de-facto appeals chief (VT). As my resume (attached) discloses, I attended Northwestern University School of Law, where I was Editor-in-Chief of the Northwestern University Law Review. I then clerked for two federal judges, Judge Robert Sprecher, United States Court of Appeals for the Seventh Circuit and Justice John Paul Stevens, United States Supreme Court. I am admitted in New York State and the United States District Courts for the Southern and Eastern Districts of New York.

While serving as an AUSA in both the EDNY and Vermont, I have had a substantial amount of experience with national security matters (including FISA wiretaps). I was the National Security Coordinator in the U.S. Attorney's Office in Vermont and also handled (or coordinated) all the extradition matters for that office. I carried a Top Secret clearance which I presume could be reinstated without too substantial an investigation. Thus, I have experience with various issues concerning prosecution of crimes abroad, and the issues of national security which arise.

At present, I practice in Vermont with my own firm, O'Connor & Kirby, P.C. and in New York as of counsel to Krantz & Berman, LLP, and represent both individuals and corporations in both venues. If appointed to represent Mr. Al Fawwaz, I would utilize the offices at Krantz & Berman, 747 Third Avenue, New York, NY as my primary workspace, and would anticipate spending the majority of my time in New York.

## COUNSEL'S RELATIONSHIP WITH THE DEFENDANT

I have been in contact with Mr. Al Fawwaz's attorneys for more than eight months and have developed a substantial rapport with them. The initial contact came about through Mr. Al Fawwaz's attorney in the United Kingdom, Wesley

4

Gryk, who is representing Mr. Al Fawwaz with regard to immigration matters. Mr. Gryk, about a year ago, began looking for an attorney in the United States to represent Mr. Al Fawwaz. As can be seen from the letter he has written to the Court in support of this application (attached), Mr. Gryk is an attorney trained in the United States now practicing in the UK. He reached out to friends of his in the United States, including an attorney in the United State's Attorney's Office in Boston, James Farmer. Mr. Farmer, a colleague I have known for many years from our mutual supervisory responsibilities in United State's Attorney's offices, recommended that Mr. Gryk contact me.

From our initial contact, Mr. Gryk made it clear that Mr. Al Fawwaz sought true legal representation to meet these charges, not an attorney who would sensationalize the case or seek publicity for any cause. This is an individual facing possible imprisonment for life who is anxious to receive thoughtful, careful legal representation, analysis of the issues and solid advice.

While I have not had access to the discovery in the matter, I have studied and learned a great deal about the case, and about the proceedings and co-defendant cases, including Ahmed Khalfan Ghailani's trial and sentencing. I agree with Mr. Gryk's assessment that it will mean a substantial amount to someone in Mr. Al Fawwaz's situation to have counsel who is already familiar with the case, and with whom he is comfortable. He is facing the possibility of living the rest of his life in prison. He has fought extradition because the consequences of appearing in the United States are so extreme. While I am confident that Mr. Al Fawwaz would receive effective representation from any SDNY Panel member (a number of whom I have known), I do believe that he would be better served by starting with counsel that he trusts, who has substantial international criminal law experience, who has held high security clearances in the past, and whose interest in the case is strictly based on concern for Mr. Al Fawwaz.

5

## CONCLUSION

Both Mr. Al Fawwaz's interests in competent and zealous representation, and the interests of the Court in efficient and effective representation argue for appointment of counsel who has an established relationship with Mr. Al Fawwaz, who is already familiar with the case and Mr. Fawwaz's circumstances to date, who would likely face little investigation regarding security clearance, who has substantial experience with international federal criminal law issues and who is qualified to serve.

Sincerely,

David V. Kirby, Esq.
O'Connor & Kirby, P.C.
David@Kirbyoconnor.com

Denied without prejudice to renewal upon the defendant's arrival in this district and submission of a subsequent financial affidavit.

SO ORDERED

LEWIS A. KAPL...